IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIANNA RHODES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 08-0053 Erie |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

  Plaintiff, Marianna Rhodes, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.* Plaintiff protectively filed applications for DIB and SSI on October 20, 2005, alleging disability since August 1, 2005, due to depression and panic attacks (Administrative Record, hereinafter "AR", 46-48; 70-71). Her applications were denied and she requested a hearing before an administrative law judge ("ALJ") (AR 30-34). A hearing was held before an administrative law judge ("ALJ") on May 9, 2007 (AR 190-233). Following this hearing, the ALJ found that Plaintiff was not entitled to a period of disability, DIB or SSI under the Act (AR 12-21). Her request for review by the Appeals Council was denied (AR 4-6), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, both motions will be denied and the matter will be remanded to the Commissioner for further proceedings.

### I. BACKGROUND

  Plaintiff was born on July 27, 1950 and was fifty-six years old on the date of the ALJ's decision (AR 46). She has a high school education and two years of college, with past relevant work experience as a telemarketer and property manager (AR 71; 74; 225).

On August 30, 2005, Plaintiff admitted herself to the hospital for alcohol detoxification, reporting depression and withdrawal symptoms when she tried to abstain from alcohol (AR 110). She reported a history of alcohol abuse with a period of sobriety lasting 15 to 17 years (AR 110). Plaintiff indicated that she suffered a relapse approximately four months prior following the death of her mother and husband (AR 110). Plaintiff underwent successful detoxification over a three day period, attending 12-Step meetings (AR 110). She was discharged in stable condition with instructions to abstain from alcohol, attend Alcoholics Anonymous meetings, continue taking Lexapro and follow the intensive outpatient aftercare plan (AR 111). Her final diagnosis was acute alcohol withdrawal, alcohol dependence, acute alcohol intoxication, chronic alcoholism, nicotine dependence, mood disorder not otherwise specified, and anxiety disorder not otherwise specified (AR 111).

Plaintiff underwent a psychosocial assessment performed by Karen Mentz, LCSW on September 19, 2005 at Safe Harbor Behavioral Health (AR 121-131). Plaintiff reported feeling depressed and overwhelmed by caring for her mother (AR 123). She was financially dependent upon her aunt, with whom she lived (AR 121). Plaintiff complained of sleep problems and appetite disturbances, as well as decreased energy and concentration (AR 123). Plaintiff reported alcohol abuse beginning at age 55 but that she had stopped drinking in August 2005 (AR 124). Other than her recent hospitalization for alcohol abuse, Plaintiff reported no past mental health treatment and was on no medications (AR 123; 131). She reported a history of physical abuse from her father, as well as emotional abuse from her aunt (AR 121; 125). Plaintiff indicated that she left her job three years prior to care for her mother (AR 126).

On mental status examination, Ms. Mentz reported that the Plaintiff was cooperative and appropriately dressed but exhibited psychomotor agitation (AR 128). She had a flat and tearful affect, her speech was pressured, rapid and over productive, and she had feelings of hopelessness, helplessness, worthlessness and guilt (AR 129). Plaintiff was fully oriented with average intellect and cognitive functioning, and her judgment, insight and motivation were fair (AR 129; 131). Ms. Mentz diagnosed her with major depressive disorder, recurrent, and assessed a current

and past year Global Assessment of Functioning ("GAF") score of 45 (AR 130).[1]  She recommended Plaintiff undergo individual and group therapy and psychiatric treatment at Safe Harbor (AR 131).

Plaintiff attended therapy sessions at Community Integration, Inc. on September 19, 2005, September 30, 2005 and October 11, 2005 (AR 133-135).  Plaintiff identified her long range goals as eliminating panic attacks and anxiety, finishing college with a degree in psychology and starting a property management company (AR 133-134).

Plaintiff completed a Daily Activities Questionnaire on November 21, 2005, and stated that she was able to clean her own home, shop, cook and drive a car (AR 79-80).  She indicated she had some problems getting along with her family, but had no trouble getting along with people in authority (AR 80).  Although she had trouble starting and completing projects and was unable to plan each day, she had no difficulty understanding and carrying out instructions (AR 81).  She stated she was able to report to work on time, maintain good attendance, keep up with her work, concentrate on her work for extended periods of time, accept changes in the workplace and get along with co-workers and supervisors (AR 82-83).  Plaintiff reported that she did not belong to any clubs or groups, but visited with her son every four to five months (AR 80).  She had trouble going out due to panic attacks (AR 83).

Plaintiff was psychologically evaluated on December 28, 2005 by Glenn Bailey, Ph.D. pursuant to the request of the Commissioner (AR 136-144).  Plaintiff reported to Dr. Bailey that her family moved to the United States from Hungary when she was five years old (AR 136).  She stated that her father was physically abusive to her at times (AR 136).  Plaintiff reported that she had previously worked as an apartment complex manager for eight months but was fired due to a disagreement with her boss, and had not worked since May 2003 (AR 137).  She further reported three previous suicide attempts and a past psychiatric hospitalization approximately 15 years ago

---

[1]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.  It represents "the clinician's judgment of the individual's overall level of functioning."  *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000).  Scores between 41 and 50 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id*. at 34.

(AR 137). She indicated she had been seeing a therapist since August 2005 and took 10 milligrams of Lexapro daily (AR 138). Plaintiff stated she had problems with alcohol abuse throughout her life, but had remained sober since her discharge from the hospital detoxification program in August 2005 (AR 138). Plaintiff informed Dr. Bailey that she had been depressed "a long time" and that she suffered from anxiety and a fluctuating appetite (AR 138-139). She reported a panic attack three weeks earlier while taking the bus (AR 138).

On mental status examination, Dr. Bailey reported that Plaintiff was pleasant and cooperative (AR 138). He administered the Folstein Mini-Mental Status Examination, which is a cognitive test, and the Plaintiff scored a 26 out of 30 (AR 139).[2] Her immediate memory was good and her short term memory was fair (AR 139). She was able to perform all but one of the serial 7's (AR 139). She was able to follow simple instructions and write a full sentence (AR 139). Her thought processes were intact, her speech was clear and concise, and she had no preoccupations, thought disturbances or ideas of reference (AR 139-140). Dr. Bailey found her abstract thinking was intact, and that her intellectual ability was in the average to possibly above average range (AR 140). Her impulse control was sufficient and there were no known problems with her social judgment, although it was not known whether she had problems when she was intoxicated (AR 140). Dr. Bailey stated that her insight appeared to be poor but he considered her prognosis good if she continued with psychotherapy (AR 141).

Plaintiff reported that she was generally able to perform activities of daily living, although at times she had difficulty keeping up with household chores (AR 141). She did not socialize and reported difficulty with concentration and attention due to anxiety (AR 141). Dr. Bailey recommended that she see a psychiatrist for medication review, attend AA meetings and see a therapist who specialized in substance abuse problems (AR 142). He diagnosed Plaintiff with panic attacks, anxiety and major depression, recurrent, and assigned her a GAF score of 60

---

[2]The MMSE assesses cognitive functions such as orientation, learning and memory, attention, calculations, comprehension, reading, writing, and drawing. Wilkinson v. Astrue, 2008 WL 1925133 at *4 n.8 (D.R.I. 2008). A normal score is 30, and most people score between 26-30. Id., citing Hometown Folks, LLC v. S & B Wilson, Inc., 2007 WL 2227817 at *5 (E.D.Tenn. 2007).

(AR 142).[3]

In connection with his evaluation, Dr. Bailey completed a Mental Functional Assessment form and concluded that Plaintiff was not limited in her ability to understand, remember, and carry out short, simple instructions; was only slightly limited in her ability to interact appropriately with the public, supervisors and co-workers; and was only moderately limited in her ability to understand and remember detailed instructions, make judgments on simple work-related decisions and respond appropriately to work pressures and changes in a routine work setting (AR 143).

On January 11, 2006, Roger Glover, Ph.D., a state agency reviewing psychologist, completed a Mental Residual Functional Capacity Assessment form, and found that Plaintiff was not significantly limited in a number of areas, but was moderately limited in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the public; respond appropriately to work changes; and set realistic goals or make plans independently of others (AR 158-159).  According to Dr. Glover, Plaintiff remained capable of understanding and remembering instructions, concentrating, interacting appropriately with people, adapting to changing activities within the workplace, asking simple questions, accepting instruction and could maintain regular attendance and be punctual (AR 160).  Dr. Glover found she could function in a production oriented job requiring little independent decision-making (AR 160).  He concluded Plaintiff could "meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment" (AR 160).

Plaintiff underwent a psychiatric evaluation on March 20, 2006 performed by Ralph G. Walton, M.D., from Safe Harbor (AR 161-163).  Plaintiff reported increased depression over the past three years due to divorce, taking care of her sick aunt and problems with her daughter-in-law (AR 161).  She stated that she suffered from sleep disturbances and that her concentration and memory were significantly impaired (AR 161).  She was not on any medications, but

---

[3]Scores between 51 and 60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id*.

indicated that over-the-counter herbal supplements had helped with her panic attacks (AR 161). She reported that she abused alcohol beginning approximately ten years ago, but denied any current use (AR 162).

On mental status examination, Dr. Walton reported that Plaintiff was fully oriented and presented her history in a well organized, coherent and articulate fashion (AR 162). She appeared significantly depressed, was tearful, and acknowledged feelings of helplessness and hopelessness (AR 162). She reported thoughts of suicide, but had no plan (AR 162). Dr. Walton diagnosed her with major depression, recurrent, panic disorder with agoraphobia, and assigned her a GAF score of 45 (AR 163). He recommended total abstinence from alcohol and prescribed Klonopin and Zoloft (AR 163).

Treatment notes reveal that on May 11, 2006 Plaintiff reported that her panic attacks were gone and that her depression had improved somewhat with medication (AR 165). She reported continued improvement with depression and anxiety on August 24, 2006, although at her January 8, 2007 office visit she complained of continuing depression and panic attacks (AR 165).

Plaintiff and Jean Hambrick, a vocational expert, testified at the hearing held by the ALJ on May 9, 2007 (AR 190-233). Plaintiff testified that she was a high school graduate with two years of college and had worked primarily as a property manager for the last 15 years (AR 196-197). Her job as a property manager involved interviewing residents and performing onsite inspections, as well as a fair amount of computer work (AR 197-199). Plaintiff stopped working in 2004, but chose an onset date of August 1, 2005 because she had been caring for her mother until she passed away on August 4, 2005 (AR 200-201). Plaintiff testified that she lived with her ill aunt and cared for her as well (AR 201). She admitted her problems with alcohol abuse, but stated that she had been abstinent since September 2005, and attended counseling sessions and AA meetings (AR 203; 211).

Plaintiff testified that she suffered from depression, thought about suicide and had crying spells approximately every other day, and also had panic attacks once or twice a week (AR 212; 218). She had difficulty concentrating, but was able to finish reading a newspaper article (AR 213). She claimed that several times a week she did not bath or dress herself, spending the day in bed (AR 214). She occasionally watched television, helped her aunt with paperwork and went to

dinner with her son (AR 221).  Plaintiff testified that she saw a psychiatrist or nurse practitioner every three months, and her condition had improved on medication (AR 220-221).

Following a series of hypothetical questions propounded to the vocational expert (AR 226-230), the expert opined that the Plaintiff could perform light, unskilled work as an assembly worker, cleaner and inspector (AR 227).

The ALJ subsequently issued a written decision finding that the Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 12-21).  Her request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 4-6).  She subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971).  It has been defined as less than a preponderance of evidence but more than a mere scintilla.  *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A).  Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels.  42 U.S.C. § 1382(a).  A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI.  *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a).  In order to be entitled to DIB under Title II, a claimant must additionally establish that her disability existed before the expiration of her insured status.  42 U.S.C. § 423(a), (c).  The ALJ found that Plaintiff met the disability insured status requirements of the Act through December 1, 2009 (AR 14).  SSI does

not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ determined that Plaintiff's major depressive disorder, panic attacks, generalized anxiety disorder, and alcohol dependence in "self reported remission since September 2005" were severe impairments, but determined at step three that she did not meet a listing (AR 14-15). Despite her impairments, the ALJ found:

> ...[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels; however, due to mental impairments, she is able to understand, remember and carryout only simple job tasks, consistent with unskilled work. Because she has moderate limitations in her ability to interact with the public, the claimant should be in a job that has minimal interaction with the public.

(AR 16). The ALJ concluded that although the Plaintiff could not perform her past relevant work, she could perform the jobs cited by the vocational expert at the administrative hearing (AR 19-21). The ALJ also concluded that the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible (AR 17). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. §

405(g).

While the Plaintiff advances several arguments in support of her motion for summary judgment, her contention that the ALJ failed to address and/or acknowledge the GAF scores assessed by Ms. Mentz and Dr. Walton in their reports is dispositive in this case. As this Court stated in *Rivera v. Astrue*, 2009 WL 1065920 (W.D.Pa. 2009):

> Pursuant to the final rules of the Social Security Administration, a claimant's GAF score is not considered to have a "direct correlation to the severity requirements." *See* 66 *Fed.Reg*. 50746, 50764-65 (2000). Nonetheless, the GAF remains the scale used by mental health professionals to "assess current treatment needs and provide a prognosis." *Id.* As such, "it constitutes medical evidence accepted and relied upon by a medical source and *must* be addressed by an ALJ in making a determination regarding a claimant's disability." *Watson v. Astrue*, 2009 WL 678717 at *5 (E.D.Pa. 2009) (emphasis in original), *citing Colon v. Barnhart*, 424 F. Supp. 2d 805, 812 (E.D.Pa. 2006); *see also Santiago-Rivera v. Barnhart*, 2006 WL 2794189 at *9 (E.D.Pa. 2006) (case remanded since claimant's GAF score of 50 indicated serious symptoms and ALJ failed to discuss score); *Span v. Barnhart,* 2004 WL 1535768 at *7 (E.D.Pa. 2004) (absent from ALJ's discussion was any meaningful indication of how he considered claimant's GAF scores or discounted their significance); *Escardille v. Barnhart,* 2003 WL 21499999 at *7 (E.D.Pa. 2003) (case remanded because ALJ failed to mention claimant's GAF score of 50 which constituted a specific medical finding that claimant unable to perform competitive work).
>
> Because the ALJ is required to give some reason for discounting the evidence he rejects, *see Adorno v. Shalala,* 40 F.3d 43, 48 (3rd Cir. 1994), and the ALJ's decision here fails to address the GAF score evidence, I am unable to conclude that his decision is supported by substantial evidence. The case shall be remanded to the Commissioner who is directed to specifically discuss this evidence on remand.

*Rivera*, 2009 WL 1065920 at *8.

Here, a review of the ALJ's decision confirms the fact that, although the ALJ discussed the medical evidence and the Plaintiff's testimony, he failed to discuss or make any findings relative to the Plaintiff's GAF score of 45 assigned by Ms. Mentz in September 2005 and by Dr. Walton in March 2006 (AR 130; 163). As previously indicated, a GAF score of 45 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR

any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000). I reject the Commissioner's contention that any error in this regard is harmless. Although an ALJ may "properly accept some parts of the medical evidence and reject other parts ... he must consider all the evidence and give some reason for discounting the evidence he rejects." *Adorno v. Shalala*, 40 F.3d 43, 48 (3rd Cir. 1994); *see also Irizarry v. Barnhart*, 233 Fed. Appx. 189, 192 (3rd Cir. 2007) (holding that failure to discuss, *inter alia*, GAF scores assessed by treating sources violated *Cotter*'s mandate that an ALJ's rejection of treating medical sources be explained); *Lanza v. Astrue*, 2009 WL 1147911 at *7 (W.D.Pa. 2009) (remanding case for further consideration in light of the ALJ's failure to have discussed, *inter alia*, the plaintiff's lower GAF scores). Because the ALJ failed to address the Plaintiff's lower GAF scores, this matter shall be remanded the Commissioner who is directed to specifically address this evidence on remand.

### IV. CONCLUSION

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIANNA RHODES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 08-0053 Erie |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

AND NOW, this 13th day of October, 2009, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 15] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 17] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.